# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

|                                |   |                                 |
|--------------------------------|---|---------------------------------|
| UNITED STATES OF AMERICA       | ) |                                 |
|                                | ) | Case No. 2:14CR00001            |
| v.                             | ) | **OPINION AND ORDER**           |
|                                | ) |                                 |
| **VICTORIA LYNN HOYT, ET AL.,**| ) | By: James P. Jones              |
|                                | ) | United States District Judge    |
| Defendants.                    | ) |                                 |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, Gregory M. Kallen, Big Stone Gap, Virginia, William E. Bradshaw, William E. Bradshaw, P.C., Big Stone Gap, Virginia, J. Thadieu Harris, III, St. Paul, Virginia, Charles L. Bledsoe, Bledsoe Law Office P.C., Big Stone Gap, Virginia, Michael A. Bragg, Bragg Law, Abingdon, Virginia, A. Benton Chafin, Jr., Chafin Law Firm, P.C., Lebanon, Virginia, Gregory M. Stewart, Stewart Law Office, P.C., Norton, Virginia, and Karen K. Bishop, Wise, Virginia, for Defendants.*

The defendants and the government have filed various pretrial motions in this case, in which nine defendants have been charged by indictment with crimes related to their alleged violation of the Controlled Substances Analogue Enforcement Act ("CSAEA"), 21 U.S.C. § 802(32). For the following reasons, I will deny the defendants' motions and grant the government's motions.

# I.

This case arises out of the defendants' alleged conspiracy to distribute certain synthetic cannabinoids — designated as UR-144, XLR-11, 5F-PB-22, and PB-22 — from retail stores in or near Pound, Virginia. In September 2013, various search warrants were executed at these stores and at several of the defendants' residences, which resulted in the seizure of cash, merchandise, and other property.

On February 25, 2014, the defendants were indicted by the grand jury on twenty-two counts, including conspiracy to possess with the intent to distribute and to distribute controlled substance analogues, 21 U.S.C. § 846 (Count One), possession of a Schedule I controlled substance analogue with intent to distribute, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts Two through Six), maintaining a place for the purpose of distributing a controlled substance, 21 U.S.C. § 856 (Counts Seven through Ten), use of a communication facility to further controlled substance offenses, 21 U.S.C. § 843 (Counts Eleven and Twelve), conspiracy to commit money laundering and money laundering, 18 U.S.C. §§ 1956(h) & 1956(a)(1) (Counts Thirteen through Fifteen), introducing a misbranded drug into commerce, 21 U.S.C. § 352 (Count Sixteen), witness tampering, 18 U.S.C. § 1512(b)(1) (Counts Seventeen and Eighteen), and selling drug paraphernalia, 21 U.S.C. § 863 (Counts Nineteen through Twenty-Two).

These charges stem from the defendants' alleged distribution of controlled substance analogues. A controlled substance analogue is defined as a substance:

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
>
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A).

The defendants have moved for this court to conduct a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and to exclude the testimony of the government's expert witnesses as not meeting the gatekeeping standards for scientific opinion. Further, the defendants have moved to dismiss the conspiracy and distribution charges on the grounds that the indictment is unduly vague in failing to name the controlled substances for which the defendants are alleged to have distributed analogues, and because the CSAEA is unconstitutionally vague as applied to the substances at issue. For its part, the

government has moved to preclude the defendants from arguing that they did not know that it was illegal to distribute these substances, to exclude any evidence showing that the defendants did not know that the substances were controlled analogues, and to exclude evidence relating to the government's failure to notify the defendants that their actions violated the CSAEA.

## II.

Under Federal Rule of Evidence 702, testimony from "a witness who is qualified as an expert by knowledge, skill, experience, training or education" is admissible if the expert's testimony will help the trier of fact to understand the evidence or determine a fact in issue, if the expert's opinion is based on sufficient facts or data and on reliable principles and methods, and the expert has reliably applied the principles and methods to the facts of the case. The court acts as "gatekeeper" by ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *see also United States v. Bonner*, 648 F.3d 209, 215 (4th Cir. 2011) ("It is axiomatic that a party must lay a sufficient foundation before a jury is entitled to credit the opinion of an expert witness."). In making this determination, the court is guided by various factors, including whether the expert's scientific hypotheses have been subject to objective testing or peer reviewed and published, whether the scientific technique used is subject to a known or potential error rate, whether the expert has

complied with relevant professional standards, and whether the opinion is generally accepted in the pertinent scientific community. *Daubert*, 509 U.S. at 593-95.

Importantly, in deciding admissibility, "'a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions.'" *United States v. Makkar*, No. 13-CR-0205-CVE, 2014 WL 1385298, at *2 (N.D. Okla. Apr. 9, 2014) (quoting *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227 (10th Cir. 2004)); *see also United States v. Riley*, No. 2:12-cr-00478-JAD-VCF, 2014 WL 537013, at *5 (D. Nev. Feb. 7, 2014) ("In the context of *Daubert*, the focus is on the 'principles and methodology' applied, not the conclusions [the experts] generate." (quoting Fed. R. Evid. 702)). Once the court has determined that the expert testimony has met the *Daubert* standards, disagreements with the expert's conclusions go not to admissibility but to the weight and credibility of the evidence — questions for the jury to decide. *See United States v. Nichols*, 169 F.3d 1255, 1263 (10th Cir. 1999) (holding that where contentious issue was whether laboratory test results were flawed, matter "involv[ed] the credibility of witnesses and weighing of the evidence, both of which were more suitable for resolution by the jury"); *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 709-10 (W.D.N.C. 2003) ("*Daubert*

and its progeny do[] not eliminate the need for, or otherwise prohibit, a 'battle of the experts' as long as each of the expert's reasoning and methodology is sound.").

Although the court has a duty to act as gatekeeper, "a party does not have any entitlement to any particular method" for the court to do so. *Makkar*, 2014 WL 1385298, at *2. "[A] *Daubert* hearing may be preferable in some cases, [but] such a hearing is not required and a Court may satisfy its gatekeeper function in other ways." *Id*. In particular, where the challenged evidence does not involve a new or novel scientific theory, and the question is one of weight and credibility for the jury, a *Daubert* hearing may be unnecessary. *See Nichols*, 169 F.3d at 1263.

At trial, the government plans to introduce the testimony of two Drug Enforcement Agency scientists, Daniel Willenbring, Ph.D., and Li Fang, Ph.D. The experts will testify that, based on their review of the available scientific literature and data, UR-144, XLR-11, and PB-22 are substantially similar in chemical structure and physiological effects to JWH-018, a Schedule I controlled substance, and that 5F-PB-22 is substantially similar to AM2201, another Schedule I controlled substance. On the other hand, two defense experts, Thomas Harris, Ph.D., and Patrick Woster, Ph.D., plan to testify that the substances at issue are not substantially similar to the Schedule I controlled substances for which they are alleged to be analogues. Certain of the defendants request a *Daubert* hearing, and challenge the admissibility of the government experts' testimony on the ground

that they have disregarded contrary opinions in the peer-reviewed literature in favor of conclusions dictated by the political judgments of their employer, the DEA. Further, the defendants contend that the government experts have not engaged in necessary experimentation, instead relying on studies using rats — which the defendants claim are inadequate — and on conjecture as to physiological effects from "structure-activity" data.

Based on my review of the defendants' and government's filings, I find a *Daubert* hearing to be unnecessary in this case. The defendants' arguments regarding the superiority of their own experts and conclusions are precisely the questions of weight and credibility that are for the fact-finder to decide at trial. "'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof, rather than exclusion, are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v. Chischilly*, 30 F.3d 1144, 1154 (9th Cir. 1994) (quoting *Daubert*, 509 U.S. at 596). The defendants criticize the government experts' methods, but "there is no one avenue that an expert must take to determine whether two chemical compounds are substantially similar." *United States v. Bays*, No. 3:13-CR-0357-B, 2014 WL 3764876, at *7 (N.D. Tex. July 31, 2014) (citing *United States v. Ansaldi*, 372 F.3d 118, 123-24 (2d Cir. 2004)). Moreover, although the defendants accuse the government's experts of bias, they have provided no direct evidence that their

-7-

opinions have been compromised in any way. The defendants do not contest that the government's experts are well-qualified, with extensive credentials and experience in the field, or that "DEA opinions and methodology are widely accepted by courts." *Bays*, 2014 WL 3764876, at *7. As the court in *Makkar* noted, "the identification and comparison of chemical substances are not novel scientific issues." 2014 WL 1385298, at *3.

In several recent cases, courts faced with *Daubert* hearing requests in controlled substance analogue cases involving similar substances have denied these requests. I find their reasoning to be persuasive. *See, e.g.*, *Riley*, 2014 WL 537013, at *5-6 (denying hearing request in case involving UR-144 and XLR-11 because defendants did not show experts' methodology to be unreliable, and their concerns would be best addressed through cross-examination); *Makkar*, 2014 WL 1385298, at *3 (denying hearing in case involving XLR-11 because expert testimony was reliable and necessary for jury to understand charges, and defendants did not adequately challenge expert qualifications or methodology). For these reasons, the defendants' motions for a *Daubert* hearing and to exclude the government experts' testimony are denied.

III.

Certain of the defendants have also moved to dismiss the indictment on two grounds: (1) that the indictment was insufficient because it failed to name the

controlled substances for which UR-144, XLR-11, PB-22 and 5-PB-22 are analogues; and (2) that the CSAEA is unconstitutionally vague as applied to these substances.

Beginning with the defendants' first claim, to withstand constitutional challenge, "[a]n indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (internal quotation marks and citations omitted). The Fourth Circuit has emphasized the first element, stating that an "indictment must include every essential element of an offense, or else the indictment is invalid." *Id.* (internal quotation marks and citations omitted). Otherwise, the indictment fails to provide the defendants sufficient notice of what crime they have committed. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (holding that due process requires fair notice of what constitutes an offense).

The defendants argue that the indictment fails to state an offense, because although the charges are based on allegations that they conspired to distribute analogues of Schedule I controlled substances, the indictment does not identify what those controlled substances are. The defendants point out that federal courts, including the Fourth Circuit, have interpreted the elements of the CSAEA to be

-9-

read conjunctively. This means that, in order to sustain a conviction, the government must show that the analogue is "substantially similar" in chemical structure to a controlled substance, and that it has similar or greater physiological effects or the offender intends for it to have such effects. *See United States v. Klecker,* 228 F. Supp. 2d 720, 727 (E.D. Va. 2002), *aff'd*, 348 F.3d 69 (4th Cir. 2003); *see also United States v. Turcotte*, 405 F.3d 515, 522 (7th Cir. 2005); *United States v. Fedida*, 942 F. Supp. 2d 1270, 1277 (M.D. Fla. 2013); *United States v. Vickery*, 199 F. Supp. 2d 1363, 1370-71 (N.D. Ga. 2002).

The question, then, is whether the identity of the controlled substances for which the defendants have allegedly distributed analogues is an essential element of a CSAEA violation. Other courts to have considered the issue have uniformly held that it is not. *See, e.g., Makkar*, 2014 WL 1385298 at *5; *United States v. Davis*, No. 1:13–cr–00043–MR–DLH–1, 2013 WL 6499533, at *2 (W.D.N.C. Dec. 11, 2013); *Newbold v. United States,* Nos. 1:08CV698, 1:05CR262-1, 2009 WL 2243642, at *11 (M.D.N.C. July 27, 2009), *aff'd,*490 F. App'x 614 (4th Cir. 2012) (unpublished). "[T]he failure to allege the specific Schedule I controlled substance to which [the substance] is an analogue is not fatal to the Indictment." *Davis*, 2013 WL 6499533, at *2. Rather, "[a]n indictment that tracks the statutory language is ordinarily sufficient to allege an offense." *Id*. (citing *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999)). Because the indictment in this case incorporated

-10-

Case 2:14-cr-00001-JPJ-PMS   Document 250   Filed 10/08/14   Page 10 of 17   Pageid#: 1444

the statutory definition of a controlled substance analogue and clearly alleged offenses related to the possession and distribution of these analogues, the defendants were provided adequate notice of the crimes being charged. Even if the indictment was insufficient, however, "such deficiency may be remedied through discovery or by requiring the Government to file a bill of particulars." *Davis*, 2013 WL 6499533, at *3. Here, the government has disclosed expert opinions that identify the controlled substances for which the substances are alleged to be analogues.

Next, the defendants argue that the CSAEA is "void for vagueness" because the definition of "controlled substance analogue" under 21 U.S.C. § 802(32)(A) lends itself to arbitrary and discriminatory enforcement when applied to the substances listed in the indictment. The crux of the defendants' argument is that the analogues here are not sufficiently similar in chemical composition and physiological effects to comply with the requirements of the statute and avoid a "standardless sweep" in enforcement. *See Smith v. Goguen*, 415 U.S. 566, 575 (1974).

"[A] criminal statute is unconstitutionally vague if it does not sufficiently define an offense such that ordinary people can understand what conduct is prohibited." *United States v. McFadden*, 753 F.3d 432, 439 (4th Cir. 2014) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). In determining whether a statute

is void for vagueness, the "court must consider both whether it provides notice to the public and whether it adequately curtails arbitrary enforcement." *Klecker*, 348 F.3d at 71 (citing *Kolender*, 461 U.S. at 357-58). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975).

The defendants argue that there is insufficient similarity between the analogues and controlled substances in this case to put a reasonable person on notice that their conduct would constitute criminal behavior. They contend that the law requires that the government must prove that the defendants knew that the substances they were selling had similar chemical structures and effects to controlled substances, citing *United States v. Turcotte*, 405 F.3d 515, 527 (7th Cir. 2005). They point out that experts disagree as to whether these drugs are substantially similar in structure or effect, and argue that, without a scientific consensus, the defendants do not have adequate notice of which substances are illegal. *See United States v. Forbes*, 806 F. Supp. 232, 238 (D. Colo. 1992).

The defendants' recitation of the law regarding mens rea in CSAEA cases is not supported by Fourth Circuit precedent. In *McFadden*, the court clarified that the "intent element [under the CSAEA] requires that the government prove that the defendant meant for the substance at issue to be consumed by humans." 753 F.3d

at 441, 444; *see also Klecker*, 348 F.3d at 71. The *McFadden* court rejected the Seventh Circuit's "strict knowledge requirement" imposed in *Turcotte*, and held that the CSAEA "may be applied to a defendant who lacks actual notice that the substance at issue could be a controlled substance analogue." 753 F.3d at 444 (citing *Klecker*, 348 F.3d at 72). Therefore, under Fourth Circuit precedent, the government need not prove that the defendants knew that the substances were substantially similar in chemical structure or effect to controlled substances, only that they intended that the substances be consumed by humans.[1] *See id.*, at 71.

The CSAEA's "intent requirement alone tends to defeat any vagueness challenge" on the basis that the law lends itself to arbitrary enforcement. *Id.* Arbitrary and discriminatory enforcement is further prevented by the statute's requirements that the government prove (1) substantial chemical similarity between the alleged analogue substance and the controlled substance, and (2) actual, intended or claimed pharmacological similarity of the substances. *McFadden*, 753 F.3d at 441.

---

[1] To the extent that certain of the present charges relate to controlled substances rather than controlled substance analogues, the government must prove that the defendants knew that they possessed or distributed a controlled substance. *United States v. Dau*, No. 7:13-cr-00082, 2014 WL 4187327, at *5 (W.D. Va. Aug. 22, 2014). The government need not prove, however, that the defendants knew they "might be involved in some sort of criminal activity." *United States v. Morales*, 577 F.2d 769, 773 (2d Cir. 1978). Nor does the proof need to show that they knew "the exact nature of the drug; it is sufficient that they be aware that they possessed 'some controlled substance.'" *Dau*, 2014 WL 4187327, at *5 (quoting *Morales*, 577 F.2d at 773).

The statute also provides adequate notice that the substances allegedly sold by the defendants were illegal. The considerable similarities between the substances sold by defendants and the Schedule I controlled substances, as evidenced by the exhibits in this case, are "sufficient to 'put a reasonable person on notice'" that the substances at issue are analogues. *Id.* at 439 (quoting *Klecker*, 348 F.3d at 72). Moreover, "disagreement between experts on the chemical similarities of two substances does not conclusively show that a statute is void for vagueness, because experts in the field regularly disagree about the similarity of chemical substances." *Makkar*, 2014 WL 1385298, at *7 (citing *Klecker*, 348 F.3d at 71-72). Although *McFadden* and *Klecker* involved distinct substances from those in this case, other courts have determined that the CSAEA is not void for vagueness as applied to several of the substances at issue here. *See, e.g.*, *Makkar*, 2014 WL 1385298, at *7 (rejecting void-for-vagueness challenge as to XLR-11 and JWH-018); *United States v. Long*, No. CR 13-30028 RAL, 2014 WL 1661497, at **4-5 (D.S.D. Apr. 25, 2014) (rejecting vagueness challenge as to UR-144, XLR-11 and JWH-018); *Fedida*, 942 F. Supp. 2d at 1273 (rejecting vagueness challenge as to UR-144, XLR-11 and JWH-18); *United States v. Nassir*, No. 5:12–CR–102–JMH, 2013 WL 5373625, at *4 (E.D. Ky. Sept. 25, 2013) (rejecting vagueness challenge as to AM2201 and JWH-018).

So long as the defendants have reasonable notice of the illegality of their conduct, whether the substances listed in the indictment are, in fact, substantially similar to controlled substances is a factual issue that cannot be resolved on a motion to dismiss. *See Klecker*, 348 F.3d at 72 ("Whether a particular substance qualifies as a controlled substance analogue is a question of fact."); *Ansaldi*, 372 F.3d at 123 (noting that "reasonable juries can disagree" about whether substance is a controlled substance analogue). For these reasons, the defendants' motion to dismiss on vagueness grounds is denied.

## IV.

For its part, the government has moved to preclude the defendants from arguing or introducing any evidence showing that they did not know that the substances they allegedly sold were controlled substance analogues or that it was illegal to distribute them. Further, the government moves to exclude any evidence relating to the government's failure to notify the defendants that they were violating the CSAEA, including cease-and-desist letters sent to other retailers in this district for selling the same substances.

As an initial matter, Fourth Circuit precedent is clear that to prove a CSAEA violation, it is not necessary for the government to show that the defendants had actual notice that the substances at issue were controlled substance analogues. *McFadden*, 753 F.3d at 444; *Klecker*, 348 F.3d at 72. The government does not

have to prove that the defendants knew that the alleged analogue substances had similar chemical structures or physiological effects to controlled substances, only that they intended the substances to be consumed by humans. *Id.* Therefore, any evidence from the defendants that they lacked knowledge as to the statutory elements — apart from the intent for human consumption — is irrelevant to the issues of the case and must be excluded under Federal Rule of Evidence 401.

Second, it is well-established that ignorance of the law is no defense to criminal prosecution. *Cheek v. United States*, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system."). As explained above, there is no statutory requirement in the CSAEA that the defendants realize that their actions were illegal. Therefore, any arguments or evidence presented by the defendants that they did not know that these substances were illegal would be tantamount to an ignorance-of-the-law defense, which is not a valid defense to the charges the defendants face. *McFadden*, 753 F.3d at 441 (rejecting defendant's argument that he reasonably believed substances were legal "because it flout[ed] the wellsettled general principle that 'ignorance of the law is no excuse' " (quoting *United States v. Mitchell*, 209 F.3d 319, 323 (4th Cir. 2000)). Such evidence would include the cease-and-desist letters sent to other retailers in the area, which could only be offered to show the defendants' lack of knowledge of illegality.

-16-

Case 2:14-cr-00001-JPJ-PMS   Document 250   Filed 10/08/14   Page 16 of 17   Pageid#: 1450

For these reasons, I will grant the government's three motions.

V.

For the reasons stated above, it is **ORDERED** that the defendants' motions to exclude the government's expert testimony under *Daubert*, and to dismiss the case based on a vague indictment and unconstitutional state (ECF Nos. 144, 146, 149 (Defendant McConnell), 151 (Defendant Linda Pirtle), 152 (Defendant Vestal), 153 (Defendant Hoyt), 155, 157, 158 (Defendant Constance Stephens) and 163 (Defendant Curry)) are DENIED. It is further **ORDERED** that the government's motions to exclude evidence that the defendants did not know that the substances were analogue substances or that their conduct was illegal (ECF Nos. 202, 203), and to exclude evidence that the government failed to notify the defendants of a CSAEA violation (ECF No. 204), are GRANTED.

ENTER: October 8, 2014

/s/ James P. Jones
United States District Judge